UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CEMTREX, INC.,

Petitioner,

v.

DISCOVER GROWTH FUND, LLC,

Respondent,

v.

CONTINENTAL STOCK TRANSFER AND TRUST COMPANY, INC.,

Nominal Respondent.

DISCOVER GROWTH FUND, LLC,

Movant,

v.

CEMTREX, INC.,

Respondent.

**Case No. 19-cv-03587 (GBD)**

**Electronically Filed**

# MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT DISCOVER GROWTH FUND, LLC'S MOTION PURSUANT TO FEDERAL RULE 65.1 TO ENFORCE SURETY'S LIABILITY ON TEMPORARY RESTRAINING ORDER BOND

Richards Kibbe & Orbe LLP
200 Liberty Street, New York, NY 10281

*Counsel for Respondent-Movant*
*Discover Growth Fund, LLC*

Dated: May 15, 2019

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 1

ARGUMENT ..... 3

I. Discover Was Wrongfully Restrained and Is Entitled to Its Costs and Damages ..... 3

A. Discover Was Wrongfully Restrained ..... 4

B. Discover Is Entitled to Costs and Damages ..... 5

1. Discover Is Entitled to Damages Because Cemtrex Failed to Deliver Conversion Shares ..... 6

2. Discover Is Entitled to Its Lost Profits ..... 9

3. Discover Is Entitled to Its Attorneys' Fees ..... 10

CONCLUSION ..... 11

## TABLE OF AUTHORITIES


Page(s)

**CASES**

*Agnew v. Alicanto, S.A.*,
125 F.R.D. 355 (E.D.N.Y. 1989) .....10

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
910 F.2d 1049 (2d Cir. 1990) .....4, 5

*Coyne-Delany Co., Inc. v. Capital Dev. Bd. of State of Ill.*,
717 F.2d 385, 391 (7th Cir. 1983) .....5

*Fullford v. Rawls*,
1986 WL 14675 (D.V.I. Dec. 11, 1986) .....9

*Government of Virgin Islands v. Connor*,
60 V.I. 597 (V.I. 2014) .....6

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) .....4

*Kurt S. Adler, Inc. v. World Bazaars, Inc.*,
897 F. Supp. 92 (S.D.N.Y. 1995) .....9

*La Plaza Defense League v. Kemp*,
742 F. Supp. 792 (S.D.N.Y. 1990) .....3

*LG Capital Funding, LLC v. 5Barz Int'l, Inc.*,
307 F. Supp. 3d 84 (E.D.N.Y. 2018) .....9

*Maxim Grp. LLC v. Life Partners Holdings, Inc.*,
690 F. Supp. 2d 293 (S.D.N.Y. 2010) .....7

*McGuire v. Russell Miller, Inc.*,
1 F.3d 1306 (2d Cir. 1993) .....10

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
16 F.3d 1032 (9th Cir. 1994) .....5

*Nokia Corp. v. InterDigital, Inc.*,
645 F.3d 553 (2d Cir. 2011) .....5, 10

*Oscar Gruss & Son, Inc. v. Hollander*,
337 F.3d 186 (2d Cir. 2003) .....7

*Rasmussen v. Dalmida*,
50 V.I. 1032 (D.V.I. 2008)....7

*Sanofi-Synthelabo v. Apotex, Inc.*,
488 F. Supp. 2d 317 (S.D.N.Y. 2006)....9

*Sharma v. Skaarup Ship Mgmt. Corp.*,
916 F.2d 820 (2d Cir. 1990)....6

*Simon v. Electrospace Corp.*,
28 N.Y.2d 136 (1971)....6

*SMC Corp., Ltd. v. Lockjaw, LLC*,
481 F. Supp. 2d 918 (N.D. Ill. 2007)....9

*Sterling Indus., Inc. v. Sheet Metal Workers' Nat'l Pension Fund*,
2015 WL 3407927 (E.D.N.Y. May 27, 2015)....10

*U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*,
775 F.3d 128 (2d Cir. 2014)....4, 9

**RULES**

Fed. R. Civ. P. 65.... *passim*

Fed. R. Civ. P. 65.1....3

**OTHER AUTHORITIES**

11A Charles Alan Wright, Arthur R. Miller & Mark Kay Kane, *Federal Practice & Procedure* § 2972 (2d ed. 2011)....3

## PRELIMINARY STATEMENT

When Petitioner Cemtrex, Inc. ("Cemtrex") came to this Court on an *ex parte* basis to restrain Respondent Discover Growth Fund, LLC ("Discover") from converting its preferred shares into Cemtrex common stock *and* to prevent Discover from trading the Cemtrex shares it already held, it bound itself under Fed. R. Civ. P. 65(c) & 65.1 and the parties' Securities Purchase Agreement (the "SPA") to make Discover whole from any damages, costs, and attorneys' fees that might result from the wrongful issuance of a temporary restraining order. That is what happened, and now Discover brings this motion to be made whole.

In the SPA, Cemtrex promised always to honor Discover's conversion requests and never to seek equitable relief in the event of a disagreement between the parties as to the calculation of a request. In breach of both covenants, it obtained a temporary restraining order. But once Discover had an opportunity to be heard, the Court quickly understood that Cemtrex had no basis whatsoever to seek equitable relief and lifted the restraining order. During the pendency of the wrongfully issued restraining order Discover suffered damages and incurred costs and fees, and under Fed. R. Civ. P. 65(c) & 65.1 and the SPA, Discover is entitled to an award in the amount of $150,000, the full amount of the surety bond Cemtrex obtained and filed on the docket of this matter.

## FACTUAL BACKGROUND

On April 18, 2019, Discover issued a conversion request to Cemtrex and its transfer agent, Continental Stock Transfer and Trust Company ("Continental"), for the conversion of 200 shares of Series B Preferred Stock with a face value of $100,000 to common stock (the "Conversion Request"). (Declaration of John Kirkland ("Kirkland Decl."), ECF No. 14 ¶ 87.) Despite its clear and unambiguous contractual obligation to deliver the shares to Discover upon request, (Kirkland Decl. Ex. 3, ECF No. 14-3 ("SPA") § V.A.1.f), Cemtrex instructed

Continental not to comply with the Conversion Request and not to issue any shares to Discover. (*Id.* ¶ 88.) On April 23, 2019, Cemtrex moved by an Order to Show Cause for an *ex parte* temporary restraining order (the "TRO") prohibiting Continental from honoring the Conversion Request and prohibiting Discover from receiving its already requested shares, converting any additional shares of Preferred Stock to common stock, or in any way trading in Cemtrex stock. (ECF No. 1.)

In support of its TRO request, Cemtrex obtained a $150,000 surety from Atlantic Specialty Insurance Company ("Atlantic"), with bond number 810001221 (the "Surety"). Cemtrex submitted a copy of the Surety with its TRO papers (Declaration of Andrew Podolin ("Podolin Decl.") Ex. 1), and also attached a copy of the Surety to its Preliminary Injunction papers. (Declaration of Saagar Govil Ex. D, ECF No. 7-4.) The Surety provides that Atlantic "does hereby undertake to pay all costs and disbursements that may be decreed to" Discover "not exceeding the amount of One Hundred Fifty Thousand and 00/100" if the TRO or preliminary injunction "be wrongfully obtained and without sufficient cause." (*Id.*)

After reviewing Cemtrex's TRO papers, including the Surety, this Court issued the requested TRO on April 23, 2019, prohibiting Discover from "taking any steps or other processes that result in any attempt to sell, transfer, assign, encumber, or otherwise dispose of Discover's shares of stock." (ECF No. 3.) Although the Court at its discretion only ordered Cemtrex to post a security of $100,000, the Court took note of the Surety, writing on the TRO Order "Security deposit in the amount of $150,000." (*Id.*) While the TRO was in place, Discover was denied the approximately 500,000 shares of common stock that it had already requested and was prohibited from making any further conversion requests or from buying or selling any common stock on the open market. Cemtrex's stock traded up to a price of $0.38

during this time, but because of the TRO, Discover was unable to participate in any trading and was unable to dispose of its shares. The common shares that Discover eventually received pursuant to the Conversion Request are now worth just $0.30.

During a hearing on April 30, 2019, counsel for Cemtrex represented to the Court that Cemtrex "already ha[d] $150,000 bond, which is 50,000 more than this Court required" and that Cemtrex was "willing to increase that [existing] bond." (Podolin Decl. Ex. 2 at 42:6–9.) Following the hearing, the Court lifted the TRO and denied Cemtrex's motion for a preliminary injunction in its May 1, 2019 Order. (ECF No. 20.) The Court explained that a TRO was not warranted because what the Court described as the "clear, plain language" of the SPA prohibited Cemtrex from obtaining equitable relief in connection with a share conversion. (*See* Podolin Decl. Ex. 2 at 43:24–47:16.) Put simply, the Court saw through Cemtrex's impermissible gambit and enforced the terms of the SPA.

## ARGUMENT

### I. DISCOVER WAS WRONGFULLY RESTRAINED AND IS ENTITLED TO ITS COSTS AND DAMAGES

Rule 65 of the Federal Rules of Civil Procedure provides that a temporary restraining order may only issue "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[1] Fed. R. Civ. P. 65(c). Following the lifting or dissolution of the wrongfully issued order, a defendant may seek to enforce the surety's liability "on motion without an independent action." Fed. R. Civ. P. 65.1; *see also* 11A Charles Alan Wright, Arthur R. Miller & Mark Kay Kane, *Federal Practice & Procedure* § 2972 (2d ed. 2011) (stating that Rule 65.1 "permits the

[1] Although as a technical matter the district court has discretion to waive the bond requirement, *see La Plaza Defense League v. Kemp*, 742 F. Supp. 792, 807 n.13 (S.D.N.Y. 1990), the Court did not do so here. (ECF No. 3.)

liability of a surety to be enforced through an expeditious, summary procedure without the necessity of an independent action"). By issuing the bond, the surety "submits to the court's jurisdiction and irrevocably appoints the court clerk as its agent for receiving service of any papers that affect its liability on the security." Fed. R. Civ. P. 65.1.

### A. Discover Was Wrongfully Restrained

In order to recover damages under Rules 65(c) and 65.1, a party must show that it was "wrongfully enjoined or restrained." "The focus of the 'wrongfulness' inquiry is whether, in hindsight . . . the injunction should not have issued in the first instance." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990). In other words, an injunction is proper and not wrongful if "the defendant should not have been engaging in the conduct that was enjoined." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 315 (1999) (emphasis omitted).

"[W]here a district court dissolves a TRO without granting the plaintiff's motion for a preliminary injunction, a plaintiff seeking to defeat the defendant's request for recovery from the TRO security bears the burden of establishing that the defendant was not wrongfully restrained and is, therefore, not entitled to recover from the TRO security." *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 140 (2d Cir. 2014). Cemtrex will not be able to meet its burden. The terms of the SPA are unambiguous, and make clear that Discover *was* wrongfully restrained:

> Notwithstanding any other provisions of any Transaction Document: all of the requirements of this **Section V.A** are each independent covenants; *[Cemtrex's] obligations to issue and deliver Conversion Shares upon any Delivery Notice are absolute, unconditional and irrevocable*; any breach or alleged breach of any representation or agreement, or any violation or alleged violation of any law or regulation, by any party or any other person will not excuse full and timely performance of any of the Company's obligations under these sections; *and under no circumstances may Company seek or obtain any temporary, interim or*

> *preliminary injunctive or equitable relief to prevent or interfere with any issuance of Conversion Shares to [Discover].*

(SPA § V.A.1.f. (emphasis added).) This contractual language imposes an "absolute" duty on Cemtrex to deliver shares "upon any Delivery Notice" and prohibits Cemtrex from seeking or obtaining a TRO preventing the delivery of shares to Discover. As the Court acknowledged during the preliminary injunction hearing, there were no grounds for Cemtrex to seek the TRO and, with the benefit of hindsight, it is clear that that the TRO "should not have issued in the first instance." *See Blumenthal*, 910 F.2d at 1054.

**B. Discover Is Entitled to Costs and Damages**

Because Discover's damages from the pendency of the TRO are provable from the parties' SPA, Cemtrex will be unable to rebut the presumption in favor of Discover's full recovery. A wrongfully enjoined party "is entitled to a presumption in favor of recovery against a bond posted pursuant to Rule 65(c)." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 556–57 (2d Cir. 2011); *see also Coyne-Delany Co., Inc. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385, 391 (7th Cir. 1983) ("Most cases hold . . . that a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case."). "The burden of demonstrating that recovery should be denied is on the party *opposing* recovery." *Nokia*, 645 F.3d at 559 (emphasis added). Discover is "entitled to damages as may be shown to have been proximately caused by the" TRO. *Blumenthal*, 910 F.2d at 1056; *see also Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1038 (9th Cir. 1994) (holding that damages may be calculated according to a "rational and reliable estimate" and with "reasonable certainty").

### 1. Discover Is Entitled to Damages Because Cemtrex Failed to Deliver Conversion Shares

By wrongfully seeking a TRO, Cemtrex breached its clear and unambiguous contractual obligation to cause the delivery of conversion shares to Discover. But for the wrongfully issued TRO, Cemtrex's transfer agent, Continental, would have delivered the conversion shares to Discover on or before April 22, 2019. Discover is therefore entitled to damages for the failure to deliver shares proximately resulting from the TRO.

#### (a) Discover Is Entitled to Common Law Damages

The SPA is governed by the law of the U.S. Virgin Islands ("U.S.V.I."). (SPA § VI.G.) Discover has not found any instance in which a U.S.V.I. court has considered the measure of damages for failure to deliver shares. However, it is likely that a U.S.V.I. court would adopt the New York rule, which is long-established. *See Government of Virgin Islands v. Connor*, 60 V.I. 597, 600 (V.I. 2014) ("[U.S.V.I.] courts should consider three non-dispositive factors to determine Virgin Islands common law: (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." (quotation omitted)).

In New York, damages for failure to deliver shares are calculated by taking the difference between the contract price and the fair market value of the shares at the time of the breach. *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196–97 (2d Cir. 2003); *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990) ("The damage award resulting from a breach of an agreement to purchase securities is the difference between the contract price and the fair market value of the asset at the time of breach . . . ."); *Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 145 (1971). This measure of damages was chosen because it "put[s] the plaintiff in

the same economic position he would have occupied had the breaching party performed the contract," *Oscar Gruss & Son*, 337 F.3d at 196, and it is therefore consistent with the expectation damages generally awarded by U.S.V.I. courts in breach-of-contract actions. *See, e.g.*, *Rasmussen v. Dalmida*, 50 V.I. 1032, 1038 (D.V.I. 2008) ("The preferred basis of contract damages seeks to protect an injured party's 'expectation interest'—that is, the interest in having the benefit of the bargain—and accordingly awards damages designed to place the aggrieved in as good a position as would have occurred had the contract been performed." (quoting *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998)).

Here, Discover was entitled to delivery on April 23, 2019 of 503,313 shares of Cemtrex common stock. (Podolin Decl. Ex. 3.) To determine the fair market value of a publicly traded stock on the date of breach, "we use 'the mean between the highest and lowest quoted selling prices,' as provided by the public exchange upon which the stock traded." *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 301 (S.D.N.Y. 2010) (quoting *United States v. Cartwright*, 411 U.S. 546, 551 (1973)). On April 23, 2019, the date of breach, Cemtrex shares traded at a mean price of $0.347 per share, yielding a total market value of $174,397.95 for the 503,313 shares that were not delivered to Discover. (Podolin Decl. Ex. 6.) Because Cemtrex agreed that Discover could exchange $100,000 of preferred shares for $174,397.95 worth of common shares, Discover is entitled to contract damages of $74,397.95.[2]

[2] As this Court noted during the preliminary injunction hearing, if Cemtrex wishes to dispute Discover's calculation of the number of conversion shares to which it is entitled, Cemtrex's only option under the SPA is to institute a damages action against Discover for the supposed excess shares. (Podolin Decl. Ex. 2 at 45:10–20; SPA § V.A.1.f.) Cemtrex's obligation to deliver the full number of requested conversion shares was absolute and unconditional, and Cemtrex is liable to Discover for failing to deliver all of the shares requested.

(b) Discover Is Entitled to Liquidated Damages

If this Court declines to award damages under the New York test for any reason, Discover may still elect to recover under the SPA itself:

> If [Cemtrex] for any reason does not issue or cause to be issued to the Investor within 2 Trading Days (T+2) after the date of a Delivery Notice, the number of Conversion Shares stated in the Delivery Notice, then, in addition to all other remedies available to the Investor, as liquidated damages and not as a penalty, [Cemtrex] will pay in cash to the Investor on each day after such 2nd Trading Day that the issuance of such Conversion Shares is not timely effected an amount equal to 2% of the product of (i) the aggregate number of Conversion Shares not issued to the Investor on a timely basis and to which the Investor is entitled and (ii) the highest Closing Price of the Common Stock between the date on which [Cemtrex] should have issued such shares to the Investor and the actual date of receipt of Conversion Shares by Investor. It is intended that the foregoing will serve to reasonably compensate Investor for any delay in delivery of Conversion Shares, and not as punishment for any breach by [Cemtrex]. [Cemtrex] acknowledges that the actual damages likely to result from delay in delivery are difficult to estimate and would be difficult for Investor to prove.

(SPA § V.A.1.e (emphasis added).) A "Trading Day" is "any day on which the Common Stock is traded on the Trading Market; provided that it will not include any day on which the Common Stock is (a) scheduled to trade for less than 5 hours, or (b) suspended from trading." (SPA Ex. 1.) A "Delivery Notice" is the "delivery of one or more written notices to [Cemtrex] (via email) and its transfer agent . . . of [Discover]'s election to convert any or all of [Discover's] shares of Series B Preferred Stock." (SPA §§ V.A.1.a, d.)

Discover submitted a Delivery Notice requesting the delivery of 503,313 Conversion Shares to Cemtrex and Continental on April 18, 2019. (Podolin Decl., Ex. 3.) Cemtrex cannot dispute that, by seeking a TRO, it caused "the number of Conversion Shares stated in the Delivery Notice" not to be issued to Discover. Discover is accordingly entitled to recover 2% of the product of 503,313 shares and $0.382 (the closing price on April 29, 2019) for each of the 10 calendar days between April 23, 2019 and May 2, 2019, when the Conversion Shares were finally delivered—a total of $38,453.11. (*See* Podolin Decl. Ex. 6.)

Under U.S.V.I. law, a liquidated damages provision will be enforced so long as proof of loss is difficult and the amount of damages is not clearly disproportionate to the potential loss. *Fullford v. Rawls*, 1986 WL 14675, at *4 (D.V.I. Dec. 11, 1986). The parties here have agreed that actual damages resulting from delay are "difficult to estimate . . . and prove" and are intended to "reasonably compensate [Discover] for any delay . . . and not as punishment." *Cf. LG Capital Funding, LLC v. 5Barz Int'l, Inc.*, 307 F. Supp. 3d 84, 102 (E.D.N.Y. 2018) (declining to enforce liquidated damages provision that "expressly uses the word 'penalty' to describe" fixed daily payments that are not proportionate to the number of shares at issue). And they have elected to use a formula which incorporates the number and market price of shares actually at issue, ensuring proportionality between the contractual damages and potential loss.

**2. Discover Is Entitled to Its Lost Profits**

During the pendency of the TRO in this case, Discover was prohibited from trading on trading days during which the share price of Cemtrex common stock was higher than it would be on the days following the lifting of the TRO. Discover therefore missed out on the opportunity to sell its shares of Cemtrex common stock at this higher price. Cemtrex should compensate Discover for its lost profits, which are recoverable as damages under Rule 65(c). *See, e.g.*, *SMC Corp., Ltd. v. Lockjaw, LLC*, 481 F. Supp. 2d 918, 930 (N.D. Ill. 2007); *Sanofi-Synthelabo v. Apotex, Inc.*, 488 F. Supp. 2d 317, 349 (S.D.N.Y. 2006), *aff'd*, 470 F.3d 1368, 1385 (Fed. Cir. 2006); *Kurt S. Adler, Inc.*, *v. World Bazaars, Inc.*, 897 F. Supp. 92, 100 (S.D.N.Y. 1995); *see also U.S. D.I.D. Corp*, 775 F.3d at 142 (stating that "[r]estitution is the proper remedy to return the parties to the position that they would have been in had the" TRO not wrongfully issued).

Specifically, when Discover became restrained by the TRO it owned 107,215 shares of Cemtrex common stock which it intended to dispose of. (Declaration of John Burke ("Second Burke Decl.") ¶ 4.) Had Discover followed its existing trading strategy and sold those shares of

stock on April 26 and April 29, it would have earned at least $39,957.47 in sales proceeds. (Second Burke Decl. ¶¶ 7–9.) But because of the TRO, Discover was forced to hold the shares that it wished to sell; when it did sell them, Discover earned only $36,345.54 in sales proceeds. (*Id.* ¶ 10.) Discover therefore lost profits of <u>$3,611.93</u> as a direct result of the wrongful issuance of the TRO. (*Id.* ¶ 11.)

**3. Discover Is Entitled to Its Attorneys' Fees**

Ordinarily, the "costs and damages" recoverable under Rule 65(c) will not include the prevailing party's attorneys' fees because of the general "American Rule" against fee-shifting. *Sterling Indus., Inc. v. Sheet Metal Workers' Nat'l Pension Fund*, 2015 WL 3407927, at *3 (E.D.N.Y. May 27, 2015). But there is no blanket rule prohibiting a court from awarding attorneys' fees against an injunction bond. *Nokia Corp.*, 645 F.3d at 560 (allowing recovery of legal "fees and expenses . . . incurred in complying with the injunction"); *see also Agnew v. Alicanto, S.A.*, 125 F.R.D. 355, 358 (E.D.N.Y. 1989) ("*Absent a statutory directive*, attorney's fees are not generally recoverable on a bond posted to secure a temporary restraining order pursuant to Rule 65(c)." (emphasis added)). To the contrary, the law in this Circuit is clear that, notwithstanding the American Rule, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993). Here, because the parties contemplated that any litigation between them would involve fee-shifting, Discover is entitled to recover its reasonable attorneys' fees from Cemtrex.

Again, the SPA is clear: "In any action, arbitration or proceeding, including appeal, arising out of or relating to any of the Transaction Documents or otherwise involving the parties, the prevailing party will be awarded its reasonable attorneys' fees and other costs and expenses reasonably incurred in connection with the investigation, preparation, prosecution or defense of

such action or proceeding."[3] (SPA § VI.G.) The TRO proceeding was an action or proceeding relating to the Transaction Documents and involving the parties; Discover is therefore entitled to its reasonable attorneys' fees of $101,171.25 and expenses of $1,570.04. (Podolin Decl. Exs. 4, 5.)

## CONCLUSION

For all of the foregoing reasons, Discover has shown that it suffered damages, costs and attorneys' fees in excess of the amount of the $150,000 surety bond obtained by Cemtrex. Discover therefore respectfully requests that the Court enter an Order (i) awarding Discover

[3] The SPA further provides in Section IV.G.1 that Cemtrex will "indemnify and hold [Discover] . . . harmless from any and all losses, liabilities, obligations, claims, contingencies, damages, reasonable costs and expenses, including . . . reasonable attorneys' fees and costs of investigation (collectively, 'Losses') that [Discover] may suffer or incur as a result of or relating to (a) any breach of any of the representations, warranties, covenants or agreements made by [Cemtrex] in this Agreement or in the other Transaction Documents[.]" Again, there can be no dispute that Cemtrex breached its agreement in Section V.A.1.f of the SPA that "under no circumstances may [Cemtrex] seek or obtain any temporary, interim or preliminary injunctive or equitable relief to prevent or interfere with any issuance of Conversion Shares to [Discover]." Thus, in addition to its right of recovery under Section VI.G, Discover is entitled to indemnification by Cemtrex under Section IV.G.1 for its "reasonable attorneys' fees" incurred as a result of or relating to the TRO.

$150,000.00 in damages, costs, and fees, (ii) requiring Atlantic to make payment to Discover of $150,000.00, and (iii) granting such other and further relief as it may deem just and proper.

Dated: New York, New York
May 15, 2019

Respectfully Submitted,

RICHARDS KIBBE & ORBE LLP

By: /s/ H. Rowan Gaither
H. Rowan Gaither
*rgaither@rkollp.com*
Andrew Podolin
*apodolin@rkollp.com*
Jacob Taber
*jtaber@rkollp.com*
200 Liberty Street
New York, NY 10281-1003
Telephone: 212.530.1800
Facsimile: 212.530.1801

*Attorneys for Respondent-Movant Discover Growth Fund LLC*